**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **BRIGETTE D. SMITH,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civ. No. MJM-25-3610** |
| | * | |
| **KEITH O'NEAL, JR., *et al.*,** | * | |
| | * | |
| **Defendants.** | * | |

* * * * * * * * * * *

## MEMORANDUM OPINION

Self-represented plaintiff Brigette D. Smith ("Plaintiff") filed this civil action against Keith O'Neal, Jr. and Johns Hopkins Federal Credit Union ("Defendants") for fraud, breach of contract, unjust enrichment, violation of the Uniform Commercial Code, and other violations of federal and state law resulting from the "initiat[ion] or threat[] [of] non-judicial foreclosure actions" regarding residential property in Columbia, Maryland (the "Property"). ECF No. 1 at 1–2. Now pending before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint (ECF No. 23). No hearing is necessary to resolve it. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated below, the Court grants Defendants' motion.

## I. BACKGROUND

### A. Factual Background

In July 2016, Plaintiff executed Promissory Note Loan No. 160520140498 (the "Loan") in the principal amount of $128,000, which was secured by the Property, Plaintiff's residence. ECF No. 1 at 1–2. For nine years, Plaintiff made timely payments on the Loan and invested in the Property. *Id.* at 2. At some point, defendants Johns Hopkins Federal Credit Union and O'Neal, the credit union's President and Chief Executive Officer, "securitized and monetized Plaintiff's note

without adequate disclosure or proper consideration," "fail[ing] to provide compliant disclosures and servicing responses under TILA/Reg Z and RESPA/Reg X." *Id.* This caused Plaintiff "confusion" regarding "account treatment and payment applications." *Id.* On June 3, 2025, Plaintiff mailed Defendants through "notary presentment" the following documents: an "Affidavit of Fact" and "Notice of Concern"; a "Loan Payment Coupon" for Plaintiff's account with Defendants; a "Durable Financial Power of Attorney" document; and a "Notary Acknowledgment." *See* ECF No. 1-1.

Around June 16, 2025, Plaintiff alleges that she sent Defendants "Qualified Written Requests ['QWRs'] and Notices of Error ['NOEs']"; however, "Defendants failed to timely acknowledge, investigate, and respond" to Plaintiff's requests and notices. ECF No. 1 at 3. Defendants proceeded to "furnish[] derogatory credit information" about Plaintiff, presumably to consumer reporting agencies, "without clearly indicating Plaintiff's dispute." *Id.* On August 28, Plaintiff sent Defendants another batch of documents through "notary presentment," including a "Notice of Default and Commercial Security Agreement" wherein Plaintiff asserts that Defendants' "failure to timely rebut, cure, or respond in good faith . . . constitutes a tacit agreement to the statements and terms previously presented." *See* ECF No. 1-3 at 6. The notice and agreement also assert that Defendants were "in default" and therefore subject to the commercial terms set forth therein. *Id.* at 6, 8–10, 13–14, 16–17. The commercial terms include a fee schedule. *See id.* at 8–9, 14–16. The terms state that "[a]ll fees become enforceable by default judgment if not rebutted or satisfied within 10 calendar days from the date of this notice." *Id.* at 9, 15.

On September 17, 2025, Plaintiff "tendered payment" and sent Defendants a request for "proper application or lawful explanation" of their conduct. ECF No. 1 at 3. Defendants did not

offer a response "describing servicing rationale and cure options." *Id.* On September 18, Plaintiff sent Defendants a third batch of documents through "notary presentment." ECF No. 1-4.

On October 10, 2025b Plaintiff addressed to Defendants a "Notice of Potential Litigation and Formal Demand for Arbitration/Presuit Mediation." *See* ECF No. 1-2. In the notice, Plaintiff recounted the documents she notarized and mailed to Defendants via certified delivery. *Id.* The notice was intended to serve "as a formal warning of imminent legal action and a lawful demand for presuit dispute resolution under Maryland law, federal law, and the Uniform Commercial Code (UCC)." *Id.* Alongside the notice, Plaintiff alleges that she addressed to Defendants another QWR in which she asserts that Defendants' "silence constitutes tacit acquiescence and entry into commercial default under UCC § 3-501 and common-law estoppel." *Id.* at 8. On October 16, "Plaintiff filed UCC Financing Statement No. 2025-260-5200-0[,] asserting a perfected commercial lien of $415,000[.]" ECF No. 1 at 3; ECF No. 1-5. According to Plaintiff, Defendants also "initiated or threatened non-judicial foreclosure actions despite unresolved disputes and pending statutory requests[.]" ECF No. 1 at 3. On October 31, Plaintiff filed a "Notice of Lis Pendens" in Maryland state court against Johns Hopkins Federal Credit Union concerning the Property and her Loan. ECF No. 1-6.

**B. Procedural History**

On November 4, 2025, Plaintiff filed a Complaint against Defendants with an Emergency Motion for Stay of Non-Judicial Foreclosure. ECF Nos. 1 & 2. The Court subsequently denied Plaintiff's motion. ECF No. 5. On December 5 and 12, Plaintiff filed a Renewed Motion for Stay of Non-Judicial Foreclosure, ECF No. 13, and Motion for Expedited Consideration of the Renewed Motion for Stay, ECF No. 14, respectively. The Court construed the latter motion as both a request for expedited consideration of the former motion as well as a request for a temporary restraining

order while the former motion remained pending. *See* ECF No. 18. The Court denied both motions. *Id.* On December 19, January 6, 2026, and January 11, Plaintiff filed a Consolidated Motion for Reconsideration of Order Denying Renewed Stay of Non-Judicial Foreclosure, ECF No. 19, Motion to Compel the Court to Rule on Plaintiff's Consolidated Motion for Reconsideration, ECF No. 20, and Renewed and Supplemented Motion to Expedite Ruling on the Consolidated Motion for Reconsideration and for Interim Status-Quo Protection, ECF No. 21, respectively. The Court construed the latter motion as both a request for expedited consideration of the foremost motion as well as another request for a temporary restraining order while the foremost motion remained pending. *See* ECF No. 22. The Court denied all three motions. *Id.*

On January 27, 2026, Defendants moved to dismiss Plaintiff's Complaint, ECF No. 23. Plaintiff subsequently responded in opposition, ECF No. 26, and filed a supplement, ECF No. 27. Defendants did not file a reply in support of their motion.

Plaintiff also filed a letter to the Court supplementing the Complaint, ECF No. 25; a notice clarifying that her response to Defendants' Motion to Dismiss was timely, ECF No. 27; a renewed request for an emergency stay of any non-judicial foreclosure and motion for a forensic accounting examination, ECF No. 28; and an affidavit of fact asking the Court to take judicial notice of "the docket and prior orders" and "Plaintiff's original Complaint and Emergency Stay filings[,]" ECF No. 29.

## II. DEFENDANTS' MOTION TO DISMISS

In the Complaint, Plaintiff brings claims under the Real Estate Settlement Procedures Act ("RESPA") and its implementing regulations ("Regulation X"), the Truth in Lending Act ("TILA") and its implementing regulations ("Regulation Z"), and the Fair Credit Reporting Act ("FCRA"). ECF No. 1 at 3–4. She also brings claims for breach of contract, unjust enrichment,

"Unauthorized Electronic Funds Withdrawal; Breach of Servicer Duties," and quiet title. *Id.*[1] Defendants move to dismiss the Complaint in its entirety for failure to state a claim, citing Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**A. Standard of Review**

Under Rule 12(b)(6), a party may seek dismissal for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Because "motion[s] to dismiss test[] the sufficiency of a complaint," courts assessing such motions are "generally limited to a review of the allegations of the complaint itself." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (quoting *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013)). But a court may also "consider documents that are explicitly incorporated into the complaint by reference," documents "attached to the complaint as exhibits," and documents attached to a motion to dismiss so long as they are "integral to the complaint and authentic." *Id.* at 166 (citations omitted). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached, the exhibit prevails." *Id.* (citation modified). Courts may also "take judicial notice of matters of public record and other information

[1] Under "Claims for Relief," the Complaint also purports to state claims for "Declaratory Relief; . . . Equitable Accounting" and "Lis Pendens and Recordation Relief." ECF No. 1 at 3–4. Plaintiff's requests for declaratory and injunctive relief are remedies that depend on the existence of an underlying claim. *See EnviroAnalytics Group LLC v. AXIS Surplus Ins. Co.*, 784 F. Supp. 3d 821, 835 n.9 (D. Md. 2025). Because the Court concludes that Plaintiff's underlying claims fail as a matter of law, the Court declines to grant Plaintiff the requested relief.

that . . . constitute adjudicative facts." *Goldfarb v. Mayor of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015) (citation modified).

Courts must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 592 U.S. 1264 (2021); *see also Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022). "[L]iberal construction does not require [the court] to attempt to 'discern the unexpressed intent of the plaintiff,' but only to determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a civil complaint by a self-represented plaintiff "still must contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (citation modified) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)).

**B. Discussion**

Defendants argue that Plaintiff's causes of action rely on her assertions that Defendants were contractually bound by her unilateral mailings. ECF No. 23-1 at 5; *see also* ECF Nos. 1-2 & 1-3. Defendants argue that (1) their silence does not constitute acceptance, and (2) the filing of a UCC-1 filing statement does not create a lien without a valid security agreement signed by the alleged debtor, and the Complaint lacks any allegations that Defendants executed such an agreement. ECF No. 23-1 at 5 (citation omitted). Defendants further argue that Plaintiff's notary "presentments," "administrative defaults," and other "pseudo-legal procedures" lack legal force. *Id.* (citation omitted). Particularly, Plaintiff's "fee schedules," Defendants argue, "cannot create enforceable penalties or contractual remedies." *Id.* (citation omitted). Defendants assert that, because Plaintiff's "foundational theories are invalid as a matter of law, any cause of action that depends on them necessarily fails to state a claim under Rule 12(b)(6)." *Id.* at 5–6 (citation

omitted). The Court notes Defendants' suggestion that Plaintiff's case is based on "frivolous" sovereign-citizen theories. *Id.* at 2, 5, 7.

In response, Plaintiff argues that (1) she has properly stated federal statutory claims; (2) Defendants failed to (a) acknowledge receipt of her mailings within the time required by law, (b) conduct reasonable investigations, and (c) correct or adequately explain the asserted servicing errors; (3) she pleads traditional breach of contract and unjust enrichment, not sovereign-citizen theories; (4) her UCC and "administrative" materials are just evidence and theory, not causes of action; and (5) her allegations are not conclusory. ECF No. 26 at 3–4.

**1. RESPA (Count I)**

In her Complaint, Plaintiff alleges that Defendants violated RESPA and Regulation X, the related federal rule, by failing "to timely acknowledge, reasonably investigate, and respond to Plaintiff's QWRs/NOEs addressing servicing issues (payment application, escrow, account data)." ECF No. 1 at 3. Plaintiff further alleges that Defendants' conduct caused her "actual damages[,] including postage, investigative costs, and downstream credit and financial harm[.]" *Id.* Defendants argue that Plaintiff did not send a QWR or NOE "within the meaning of RESPA[,]" fails to plead "any actual damages caused by a RESPA violation[,]" does not allege a nexus between any RESPA violation and the relief sought, and does not demonstrate "a pattern or practice of noncompliance" that may support statutory damages. ECF No. 23-1 at 7–9. Plaintiff responds that she sent several QWRs and NOEs to Defendants; that Defendants violated RESPA by failing to acknowledge receipt, investigate, and correct or explain the errors; and that she alleged concrete harm in the Complaint. ECF No. 26 at 2.

Congress enacted RESPA "to combat certain abusive practices in the real estate mortgage industry, and to ensure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process." *Fox v. Statebridge Co., LLC*,

629 F. Supp. 3d 300, 308 (D. Md. 2022) (citation modified). RESPA requires servicers of "federally related mortgage loan[s]" to respond to QWRs from borrowers, 12 U.S.C. § 2605(e)(1)(A), and creates a private cause of action if a servicer fails to respond, *id.* § 2605(f). A QWR must (1) include, "or otherwise enable[] the servicer to identify, the name and account of the borrower" and (2) include "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provide[] sufficient detail to the servicer regarding other information sought by the borrower." *Id.* § 2605(e)(1)(B); *see also* 12 C.F.R. 1024.35(a) (reiterating these requirements and explaining that a QWR "is a notice of error for purposes of this section"). "To qualify as a QWR, a document must be a 'written correspondence' that contains either (1) a 'statement of the reasons' for the borrower's belief the account is in error or (2) 'sufficient detail' regarding the information requested by the borrower." *Morgan v. Caliber Home Loans, Inc.*, 26 F.4th 643, 649 (4th Cir. 2022) (quoting *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 413 (4th Cir. 2015)). Additionally, the QWR must concern "the servicing of" the loan. *Id.* § 2605(e)(1)(A); *see also* 12 C.F.R. § 1024.35(b). "Servicing" in the context of RESPA means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3); *see also* 12 C.F.R. § 1024.2.

None of the documents attached to the Complaint fall within the definition of QWR outlined in RESPA. The June 3, 2025, document asks Defendants to provide several proofs and verifications but does not identify any particular servicing-related error with sufficient specificity for Defendants to remedy that error. *See* ECF No. 1-1. The August 20, 2025, document asserts that Defendants "are now in default" because they failed to respond to the June 3 mailing. *See* ECF

No. 1-3. Lastly, the October 10, 2025, document is a notice of "imminent legal action" and a demand for "presuit dispute resolution," and it does not identify any particular servicing-related error. *See* ECF No. 1-2. Because Plaintiff cannot show that she sent a QWR as defined by RESPA to Defendants, her RESPA claim fails. *See Morgan*, 26 F.4th at 651 (affirming dismissal of a RESPA claim where the document in question did not "constitute a QWR"). Accordingly, the Court will dismiss Plaintiff's RESPA claim.

**2. TILA (Count II)**

Plaintiff alleges that Defendants violated TILA and Regulation Z, the related federal rule, by failing "to provide accurate, material loan and servicing disclosures" and by "misappl[ying]/obscur[ing] payments[.]" ECF No. 1 at 3. In an attachment to the Complaint, she contends that she was not provided information about "the 'Right of Rescission' pursuant to 12 CFR § 1026.23." ECF No. 1-1 at 6. Defendants argue that Plaintiff's TILA claims are time-barred, the Complaint does not identify any missing or inaccurate TILA disclosures, servicing disputes are not TILA violations, and the Complaint does not allege damages under TILA. ECF 23-1 at 9–11. Plaintiff responds that Defendants' "failures in material disclosures and payment application" impeded her rights under TILA. ECF 26 at 2.

TILA was enacted to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available . . . and avoid the uninformed use of credit." *Thompson-McKoy v. Kelting*, No. 25-cv-01795-LKG, 2026 WL 2651466 (D. Md. Sep. 9, 2026) (quoting *Mourning v. Family Publ'n Serv., Inc.*, 411 U.S. 356, 355–56 (1973)). Among other things, TILA "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998); *see*

*also Watkins v. SunTrust Mortgage, Inc.*, 663 F.3d 232, 234 (4th Cir. 2011). TILA "provides a one-year statute of limitations for the filing of a suit once a violation of TILA has occurred[,]" such as a disclosure violation. *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 278 (4th Cir. 2012) (citing 15 U.S.C. § 1640(e)). The date of the violation "is the date on which the borrower accepts the creditor's extension of credit." *Strickland-Lucas v. Citibank, N.A.*, 256 F. Supp. 3d 616, 627 (D. Md. 2017) (quoting *Brown v. Ocwen Loan Servicing, LLC*, Civ. No. PJM–14–3454, 2015 WL 5008763, at *7 (D. Md. Aug. 20, 2015)).

Plaintiff alleges that Defendants did not disclose information about the right of recession to her when she closed on her home in November 1996, nor when she refinanced the mortgage in May 2003, November 2005, or July 2016. ECF No. 1-1 at 6. According to the Complaint and attached documents, Plaintiff first contacted Defendants about the right of recession in June 2025, *id.* at 2, well after the one-year statute of limitations expired. Plaintiff's claims based on Defendants' failure to provide TILA disclosures are therefore time-barred.

To the extent that Plaintiff seeks to assert the right of recession, "[e]ven if a lender *never* makes the required disclosures, the 'right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever comes first.'" *Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. 259, 262 (2015) (quoting 15 U.S.C. § 1635(f)). Accordingly, any right of recission expired in 2019.

The Court therefore dismisses Plaintiff's TILA claim.

**3. FCRA (Count III)**

Plaintiff alleges that "Defendants, as furnishers, reported derogatory information without reflecting an active dispute and failed to reasonably investigate upon notice[.]" ECF No. 1 at 3. Defendants argue that the Complaint does not allege that they received notice from a credit

reporting agency, that Defendants reported inaccurate or misleading credit information, or any cognizable damages. ECF No. 23-1 at 12–14.

The FRCA was enacted "to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. V. Burr*, 551 U.S. 47, 52 (2007). The statute "establishes 'a series of requirements for handling consumer credit information' and requires investigation when a consumer believes that there is incorrect 'information relating to [her] credit.'" *Peck v. U.S. Dep't of Lab., Admin. Rev. Bd.*, 996 F.3d 224, 232 (4th Cir. 2021), *as amended* (June 21, 2021), *cert. denied sub nom. Peck v. Dep't of Lab.*, 142 S. Ct. 902 (2022) (quoting *Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799, 802 (4th Cir. 2019)). But the duty to do so is triggered only after the furnisher receives "notice pursuant to section 1681i(a)(2) of [Title 15] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency[,]" or CRA. 15 U.S.C. § 1681s-2(b)(1). Notice under § 1681i(a)(2) "must be given by a credit reporting agency, and cannot come directly from the consumer." *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011) (collecting citations); *see also Chiang v. MBNA*, 620 F.3d 30, 30 (1st Cir. 2010) (describing CRAs as playing the role of a "gatekeeper" under the statutory scheme); *Harris v. Pa. Higher Educ. Assistance Agency/Am. Educ. Servs.*, 696 F. App'x 87, 91 (3d Cir. 2017) (observing that although a consumer may notify a furnisher directly about his dispute, "there is no private cause of action under § 1681s-2(b) for a furnisher's failure to properly investigate such a dispute").

"To bring a claim under § 1681s-2(b), 'a plaintiff must establish three elements: (1) that he or she notified the [CRA] of the disputed information, (2) that the [CRA] notified the defendant furnisher of the dispute, and (3) that the furnisher then failed to investigate and modify the inaccurate information.'" *Best v. Fed. Nat'l Mortg. Ass'n*, 450 F. Supp. 3d 606, 638 (D. Md. 2020)

(quoting *Alston v. Cavalry Portfolio Servs., LLC*, No. 8:12-CV-03589-AW, 2013 WL 665036, at *4 (D. Md. Feb. 22, 2013)); *see also Johnson v. MBNA Am Bank, NA*, 357 F.3d 426, 430–31 (4th Cir. 2004).

Plaintiff's FCRA claim fails because she does not allege that she notified a CRA of the disputed information, nor does she allege that a CRA notified Defendants of any disputed information. Although Plaintiff reached out directly to Defendants, *see* ECF No. 1 at 3, doing so does not trigger any duty in Defendants under § 1681s-2(b). Accordingly, the Court must dismiss Plaintiff's FCRA claim.

**4. Breach of Contract (Count IV)**

In the Complaint, Plaintiff alleges that "Defendants failed to perform under the note and deed of trust by improperly handling payments and account statements, and by failing to account for securitization effects on enforcement, causing financial and equitable harm." ECF No. 1 at 4. Defendants argue that Plaintiff fails to allege that they "breached any specific provision of her mortgage loan documents[,]" instead relying on other documents that they "never signed or agreed to." ECF No. 23-1 at 16–17. Plaintiff responds that, "independent of any notary presentment documents[,]" "the core of [her] allegations[]" support her breach of contract claim. ECF No. 1 at 4. The Court disagrees.

To establish a breach of contract under Maryland law, a plaintiff must show "a contractual obligation owed by the defendant to the plaintiff and a material breach of that obligation." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (citing *RRC Ne., LLC v. BAA Md., Inc.*, 994 A.2d 430, 442 (Md. 2010)). "The formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient

consideration." *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004) (citing *Peer v. First Federal Sav. & Loan Ass'n of Cumberland,* 331 A.2d 299, 301 (Md. 1975)).

Plaintiff fails to identify a breach of any specific contractual obligation that Defendants owed her. She alleges that Defendants improperly handled "payments and account statements" and failed to "account for securitization effects on enforcement." ECF No. 1 at 4. But without identifying a contractual provision establishing a definite obligation on Defendants, Plaintiff cannot identify a plausible breach of that obligation. Accordingly, the Court will dismiss Plaintiff's breach-of-contract claim.

**5. Unjust Enrichment (Count V)**

Plaintiff alleges in her Complaint that "Defendants retained benefits from payments, fees, and monetization/securitization proceeds without adequate disclosure or consideration to Plaintiff," and requests restitution and disgorgement. ECF No. 1 at 4. Defendants argue that the Complaint fails to "allege facts showing that Defendants received a benefit outside the bargained-for terms of the loan agreement." ECF No. 23-1 at 17. Plaintiff responds that the facts that she pleads support her unjust enrichment claim.

Under Maryland law, a claim of unjust enrichment requires that: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew or appreciated the benefit; and (3) it would be inequitable for the defendant to retain the benefit without paying for it. *See Hebbeler v. First Mariner Bank*, Civ. No. ELH-17-3641, 2020 WL 1033586, at *23 (D. Md. Mar. 2, 2020) (collecting cases). However, such a claim is barred where an express contract governs the subject matter of the dispute. *Id.* (citing *Janusz v. Gilliam*, 947 A.2d 560, 567 (Md. 2008)).

The Complaint does not specify what "payments, fees, and monetization/securitization proceeds" Defendants obtained, nor how Defendants obtained them. To the extent that the alleged

benefits are connected to the Loan, the agreement between Plaintiff and Defendants governing the Loan precludes any unjust-enrichment claim. The Complaint does not allege facts showing that these benefits were outside of the terms of the loan agreement. Therefore, the Court dismisses Plaintiff's claim for unjust enrichment.

**6. "Unauthorized Electronic Funds Withdrawal" (Count VI)**

Plaintiff alleges that "Defendants made or caused unauthorized withdrawals/fees affecting Plaintiff's account and credit obligations," which "violat[ed]" consumer finance duties. ECF No. 1 at 4. In a notice sent to Defendants, attached to the Complaint, Plaintiff explains that Defendants withdrew funds from her checking account and applied them "to a disputed mortgage payment" on or about October 1, 2025, which hindered her ability to make a vehicle loan payment. ECF No. 1-2 at 3. She contends that in doing so, Defendants violated the Electronic Fund Transfer Act ("EFTA"), among other laws. *Id.* Defendants argue that this claim is impermissibly vague under Federal Rule of Civil Procedure Rule 8, and that to the extent the claim invokes the EFTA, it fails as a matter of law. ECF No. 23-1 at 14–16.

The EFTA's purposes are to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems" and "the provision of individual consumer rights." 15 U.S.C. § 1693(b). It regulates "electronic fund transfers," which the EFTA defines as "any transfer of funds . . . so as to *order, instruct, or authorize a financial institution* to debit or credit an account." *Id.* § 1693a(7) (emphasis added). "By its plain meaning, that definition does not reach transfers . . . that a financial institution initiates of its own accord." *Va. is for Movers, LLC v. Apple Fed. Credit Union*, 720 F. Supp. 3d 427, 441 (E.D. Va. 2024); *see also* 12 C.F.R. § 1005.3(c)(5) (excluding from the definition of electronic fund transfer "[a]ny transfer of funds under an agreement between a consumer and a financial

institution which provides that the institution will initiate individual transfers without a specific request from the consumer").

The Complaint indicates that Defendants "made or caused" the transfers that she argues violate the EFTA. Because Plaintiff alleges that Defendants initiated the unauthorized withdrawal in question, that withdrawal is not a "electronic fund transfer" within the meaning of the EFTA. Accordingly, Plaintiff fails to state a viable EFTA claim based on the alleged withdrawal. Therefore, Court will dismiss Plaintiff's EFTA claim.

**7. Quiet Title (Count VII)**

One of the counts in the Complaint is labeled "Quiet Title." ECF No. 1 at 4. The Complaint states only that "Plaintiff seeks declaratory relief on . . . quiet title[.]" *Id.* Defendants argue that the quiet title claim fails as a matter of law. ECF 23-1 at 18–19; 22–23.

"A quiet title action under Maryland law provides a vehicle 'to protect the owner of legal title from being disturbed in his possession and from being harassed by suits in regard to his title.'" *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014) (quoting *Wathen v. Brown*, 429 A.2d 292, 294 (Md. Ct. Spec. App. 1981)). To bring a quiet title action, a plaintiff must show (1) "the defendant with a competing claim has an interest that is 'actually defective, invalid, or ineffective'" and (2) "a valid claim of entitlement to the property at issue, which requires that the plaintiff establish both possession of the property and 'legal title by clear proof.'" *Deibler v. Quicken Loans, Inc.*, Civ. No. TDC-15-2286, 2016 WL 393308, at *3 (D. Md. Feb. 1, 2016) (first quoting *Kasdon v. G. W Zierden Landscaping, Inc.*, 541 F. Supp. 991, 995 (D. Md. 1982), and then quoting *Porter v. Schaffer*, 728 A.2d 755, 766–67 (Md. Ct. Spec. App. 1999) (internal quotation marks omitted)).

Plaintiff fails to allege facts demonstrating that Defendants' claim to the Property is "defective, invalid, or ineffective." The Complaint does not indicate that the mortgage loan has been paid off or is otherwise invalid. Nor does Plaintiff plead facts to show a "valid claim of entitlement" to the Property. Plaintiff executed a loan secured by the Property, and "at that point, [she] did not have unencumbered title to the property." *Deibler*, 2016 WL 393308, at *3. Attached to the Complaint is a UCC Financing Statement indicating that Plaintiff holds a $415,000 lien on the Property against Defendants. *See* ECF 1-5. But such a statement does not create a lien without a valid security agreement signed by Defendants, of which there is no indication in the Complaint. *Mid-E. Elecs., Inc. v. First Nat. Bank of S. Md.*, 380 F.2d 355, 356 (4th Cir. 1967) (explaining that the UCC financing statement "alone did not create a security interest. It was but notice that one was claimed"). The Court will dismiss Plaintiff's claim for quiet title.

## III. PLAINTIFF'S MOTIONS

Once again, Plaintiff asks the Court to grant a "stay" of non-judicial foreclosure. ECF No. 28 at 1, 5; ECF No. 29 at 6. The Court will construe Plaintiff's filing as a renewed motion for a preliminary injunction and will deny it. On December 18, 2025, the Court issued an Order denying Plaintiff's previous motion for a stay of non-judicial foreclosure, which the Court construed as a motion for a preliminary injunction. ECF No. 18. Plaintiff argues that, since that Order, Defendants recorded a "Notice of Intent to Foreclose." ECF No. 28 at 2. However, as the Order indicated, this Court does not have jurisdiction to grant an injunction to stay foreclosure proceedings in a state court under the Anti-Injunction Act. *See* ECF No. 18 at 4–5. Moreover, preliminary injunctive relief "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Awarding this extraordinary remedy requires "a clear showing that the [movant] is entitled to such relief[,]" *Winter*, 555 U.S. at 22, which involves demonstrating that

the movant is likely to succeed on the merits of her claims, *Vitkus v. Blinken*, 79 F.4th 352, 361 (4th Cir. 2023) (citing *Winter*, 555 U.S. at 20). Here, having failed to state a plausible claim for relief this Court has jurisdiction to grant, *see* Part II.B *supra*, Plaintiff fails to make a clear showing she is likely to succeed on the merits of his claims.

Plaintiff asks the Court to take judicial notice of the docket, prior orders in this case, Plaintiff's previous filings, and "[a]ny foreclosure-related documents concerning" the Property. ECF No. 29 at 5. Courts "may properly take judicial notice of matters of public record." *Higgins v. McDonald*, 826 F. Supp. 3d 640, 650 n.10 (D. Md. 2026) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). Here, the Court has already considered its own Orders and documents Plaintiff has filed in this matter and, therefore, will deny this request.

Any other motions and requests Plaintiff has filed in this action are denied as moot.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 23) is granted, and Plaintiff's Complaint is dismissed without prejudice. Plaintiff's motions are denied. A separate Order will issue.

September 30, 2026
Date

/S/
Matthew J. Maddox
United States District Judge